IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MILLS CASHWAY PHARMACY, INC., a Louisiana corporation, individually and as the representative of a class of similarly-situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>CHANGE HEALTHCARE INC., and JOHN DOES 1-5,<br><br>    Defendants. | Case No. 3:24-cv-00978<br>Judge Aleta A. Trauger |

## MEMORANDUM

Before the court is defendant Change Healthcare Inc.'s Motion to Dismiss (Doc. No. 20) the Class Action Complaint ("Complaint") filed by plaintiff Mills Cashaway Pharmacy, Inc. ("Mills") (Doc. No. 1), which states a single claim for a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The plaintiff's position is that the defendants sent it an unsolicited advertisement by fax, in violation of the TCPA. The defendant asserts that the fax at issue was not an advertisement and, therefore, that the transmission could not have violated the TCPA. For the reasons set forth herein, the motion will be denied.

I.     **STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a

claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## II. FACTS AND PROCEDURAL HISTORY

According to the Complaint, Mills is a Louisiana corporation operating a pharmacy ("Pharmacy") in Parks, Louisiana. (Doc. No. 1 ¶ 9.) Defendant Change Healthcare is a Delaware corporation with its principal place of business located in Nashville, Tennessee. (*Id.* ¶ 10.)

On September 3, 2020, the Pharmacy received a fax transmission (the "Fax") to its dedicated telephone fax machine, which automatically printed the message to paper. (*Id.* ¶ 17.) A copy of the first page of the Fax was filed as an exhibit to the Complaint. (Doc. No. 1-1.) The header on the Fax indicates that it was sent by Change Healthcare. (*Id.* ¶ 18.) The top half of the Fax, as filed (minus the header), appears as follows:



(Doc. No. 1-1.) According to the plaintiff, the "redacted" portion of the Fax originally reflected the name and prescription number of one of the Pharmacy's customers. (Doc. No. 1 ¶ 28.) On the second half of the page, below the reproduced portion above, the patient is directed to "visit Xarelto.com" for more information, and the Fax then provides an explanation of the conditions for which Xarelto is prescribed, as well as safety information, including information about side effects. (Doc. No. 1-1.)

The plaintiff alleges that Change Healthcare is a "leading independent healthcare technology company." (Doc. No. 1 ¶ 19.) Xarelto is the brand name of a prescription medication sold in the United States by J&J Innovative Medicine (formerly known as Janssen

Pharmaceuticals, Inc.) ("J&J"). (*Id.* ¶ 21.) Based on the fact that Xarelto is a registered trademark that cannot be used without the trademark owner's permission, the plaintiff asserts that J&J knew about and approved Change Healthcare's use of the trademark and sending the Fax. (*Id.* ¶ 23.) The plaintiff asserts that the Fax constitutes an advertisement, as its apparent purpose is to encourage patients to "ask [their] doctor about a 90-day supply of Xarelto," rather than a 30-day supply or some other medication altogether, and to use the Xarelto website. (*Id.* ¶¶ 26, 30.) It contends that "the purpose underlying [the Fax] is evident from the language of the form, which seeks to sell 90-day supplies of Xarelto to pharmacies, like Plaintiff, and through them to their customers." (*Id.* ¶ 29.) Mills surmises that the defendant's intention in sending the Fax was that the Pharmacy would "influence its customer's future purchasing decisions and encourage the customer to seek a different prescription from their medical doctor." (*Id.* ¶ 31.) It also asserts that the statement in the Fax that the patient's "pharmacist has already determined that [his or her] insurance plan will cover a 90-day supply of Xarelto" was false. (*Id.* ¶ 33.) Mills states that it had no preexisting business relationship with Change Healthcare, and it points out that the Fax does not contain an opt-out notice. (*Id.* ¶ 34.)

The plaintiff filed its Complaint on August 9, 2024. Reciting the elements of a cause of action under the TCPA, Mills maintains that the sending of the Fax constitutes a violation of the statute, for which it is entitled to statutory liquidated damages of $500. It also seeks to represent a class of other entities and persons who received one or more such faxes from Change Healthcare at any time on or after August 9, 2020, although it does not identify any other putative class members.

Change Healthcare responded to the Complaint by filing its Motion to Dismiss and supporting Memorandum, arguing that the Complaint fails as a matter of law because the Fax is

not an advertisement. (Doc. Nos. 20, 21.) The plaintiff filed a Brief in Opposition, arguing that the Fax is clearly an advertisement, based on the plain language of the TCPA's definition of "advertisement" and the Sixth Circuit's construction of that language. (Doc. No. 22.) The plaintiff relies principally on *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.* ("*Enclarity*"), 962 F.3d 882 (6th Cir. 2020). The defendant has filed a Reply, arguing that the "fax-as-pretext" theory espoused in *Enclarity* is not relevant here. (Doc. No. 27.)

### III. DISCUSSION

#### A. The TCPA

As relevant here, the TCPA prohibits sending a fax that is an "unsolicited advertisement" unless, among other requirements, the fax has a satisfactory opt-out notice. See 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action for recipients of unsolicited advertisements and provides for statutory damages of $500 per violation, as well as injunctive relief to prevent future violations. *Id.* § 227(b)(3). The parties do not dispute that the Fax Change Healthcare sent to the Pharmacy was unsolicited and lacked an opt-out provision. The issue is whether the Fax qualified as an advertisement within the meaning of the TCPA.

"Whether a fax constitutes an unsolicited advertisement is a question of law." *Enclarity*, 962 F.3d at 890 (citing *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 221 (6th Cir. 2015)). The TCPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). So, generally, "[t]o be an ad, the fax must promote goods or services that are for sale, and the sender must have profit as an aim." *Sandusky*, 788 F.3d at 223–24 (citations omitted).

In *Sandusky*, the court explained that

> [a]dvertising is "[t]he action of drawing the public's attention to something to promote its sale," Black's Law Dictionary 65 (10th ed. 2014), or "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public," Webster's Third New International Dictionary 31 (1986). So material that advertises something promotes it to the public as for sale. For another thing, we know that what's advertised—here, the "availability or quality of any property, goods, or services"—must be commercial in nature. Commercial means "of, in, or relating to commerce"; "from the point of view of profit: having profit as the primary aim." Webster's Third at 456. It's something that relates to "buying and selling." Black's Law Dictionary 270 (6th ed. 1990).

*Sandusky*, 788 F.3d at 221–22.

Although the question of whether something qualifies as an advertisement is ordinarily fairly straightforward, the Sixth Circuit has also recognized that "a fax could be an advertisement without overtly offering a product or service for sale, such as offers for free seminars that turn out to be pretext for a later solicitation," and that a court's consideration of a TCPA claim is *not* confined to "the face of the challenged fax." *Enclarity*, 962 F.3d at 889 (citing *Sandusky*, 788 F.3d at 225).

In *Sandusky*, the court affirmed summary judgment for the defendant on the basis that the two faxes sent to the plaintiff, a chiropractic office, were not advertisements. There, the defendant was a benefit manager that acted "as an intermediary between health plan sponsors (often employers) and prescription drug companies." 788 F.3d at 220. The faxes notified the plaintiff recipient of certain drugs included in the defendant's "formulary"—the list of drugs available to some of the chiropractor's patients through healthcare plans offered by one of the defendant's clients. *Id.* Neither fax "contained pricing, ordering, or other sales information," and neither asked the plaintiff, "directly or indirectly, to consider purchasing [the defendant's] services." The Sixth Circuit found that "[t]he undisputed facts in the record . . . show[ed] that each [fax] merely informed [the plaintiff] which drugs its patients might prefer" because they were less expensive, "irrespective of [the defendant's] financial considerations." *Id.* at 221. The factual record was clear

that the faxes were "not sent with hopes to make a profit, directly or indirectly, from [the plaintiff] or others similarly situated," and no "record evidence show[ed] that [the defendant] hope[d] to attract clients or customers by sending the faxes." *Id.* at 222. Instead, the faxes had a "purely informational" and "non-pecuniary" purpose and were sent as part of "a paid service already rendered not to [the plaintiff] but to [the defendant's] clients." *Id.* Because the faxes did not "promote goods or services that are for sale," and because the defendant did not "have profit as an aim," *id.* at 223–24, the TCPA was not implicated.

In the present case, Change Healthcare relies heavily on the recent opinion in *S.A.S.B. Corp. v. Johnson & Johnson Health Care Sys. Inc.*, No. CV 23-21124 (ZNQ) (JTQ), 2024 WL 3949343 (D.N.J. Aug. 27, 2024), which it characterizes as directly on point and dispositive of the TCPA claim in this case. In that case, the challenged fax had an individual's name and telephone number at the top. According to the complaint, the fax

> purportedly promotes the sale of Xarelto . . . as well as the use of Janssen's CarePath program ("CarePath"), including the program's website. CarePath is a patient support program that offers free savings options and resources for patients to learn about, afford, and stay on their medication. Its website has patient and provider portals. The Fax promotes CarePath's services for specific Johnson & Johnson products, gives pharmacists information to pass along to patients about the program, and is designed to influence Plaintiff and other pharmacists to recommend CarePath to patients.

*Id.* at *1 (record citations and footnote omitted).

The plaintiff argued that the fax, by using the defendants' trademarks and discussing the CarePath program, "directly promote[d] the sale of . . . Xarelto" and made sales of Xarelto more likely, because CarePath provided resources to lower costs for patients. *Id.* at *2. The defendants, on the other hand, asserted that the fax "did not "promote or discuss the sale of Xarelto but rather points patients who have already been prescribed Xarelto to free resources to get information about the drug." *Id.* That is, according to the defendants, the fax contained only "informational

messages," and any possibility that the fax might, "in the future, result in some ancillary benefit to Defendants" was purely speculative. *Id.*

The court concluded, based on the fax itself and the allegations in the pleading that the complaint did not state a plausible TCPA claim, because the fax was not an advertisement. The court found that the second page of the fax "unquestionably contain[ed] purely informational messaging," as it consisted of answers to pertinent medical questions and drug safety information that had "nothing to do with the sale or cost of Xarelto." *Id.* at *3. The first page of the fax presented a "closer call," but the court found that the "overall thrust of the message" was "not to promote the availability or quality of Xarelto; rather, it is directed at patients who have already been prescribed Xarelto or at least have received a recommendation from their doctor to take Xarelto, and it seeks to provide them with resources to help them navigate that prescription or recommendation." *Id.* Overall, the fax did not "discuss[] the quality of Xarelto as a drug" and did not "discuss the commercial availability" of the product. *Id.* Instead, it merely "notifie[d] patients about relevant information." *Id.* The court noted in particular that the fax did not contain specific information about pricing, discounts, coupons, or product images, that Janssen's logo was "moderately sized" and did not appear near the logo for Xarelto, and that the defendants' contact information was "written in small font, while the messages about resources and patient support take up the majority of both pages" of the fax. *Id.* Finding as a matter of law that the fax was not an advertisement, the court granted the defendants' motion to dismiss.

Conversely, in *Michigan Urgent Care & Primary Care Physicians, P.C. v. Medical Security Card Co.*, No. 2:20-CV-10353-TGB, 2020 WL 7042945, at *2 (E.D. Mich. Nov. 30, 2020), where the defendant likewise contended that the fax was purely informational and did not qualify as an advertisement, the court disagreed. The fax in question, which was sent to a

physicians' office, promoted "a medical savings plan intended to be offered to patients." *Mich. Urgent Care*, 2020 WL 7042945, at *1. The fax displayed the defendant's logo "next to the header 'Prescription Savings for 25 Years: Accepted nationwide at more than 65,000 pharmacies.'" *Id.* Below that was "a graphic showing the process for using the prescription savings card associated with the savings plan, as well as a picture of what the card looks like," followed by "more information about the benefits of using the prescription savings card," along with the directive: "To request savings cards or fliers for your office, visit www.wellrx.com/pharmacies." *Id.*

The court was not persuaded that this fax was purely informational. Even though it was undisputed that the prescription savings card was "a free program," both the complaint and the fax referred to the defendant's website, which stated that it "negotiates discounts on bulk drug purchases with pharmacy owners." *Id.* at *2. The complaint alleged that, when a patient uses the card to buy medication at a pharmacy, "the pharmacy compensates the discount program." *Id.* Although the complaint did not fully describe the defendant's "business model," accepting the plaintiff's allegations as true, the court found that it plausibly alleged "sufficient facts to indicate that some money is changing hands and that the prescription savings cards being promoted ha[d] an impact on how much money that will be," and that "[m]ore granular details are properly a question for discovery." *Id.* Although the promotion was not direct, and the business model was not straightforward, "it clearly depend[ed] on having as many patients as possible use its free prescription discount cards, and the purpose of the fax is to get doctors to encourage patients to do so. The fax is therefore sent in furtherance of Defendant's business activities in a way that is more than merely 'informational'—it matters to Defendant's profits whether doctors take action based on what they read in the fax." *Id.* at *3. The court denied the motion to dismiss, finding that the

plaintiff had alleged sufficient facts to "make out the 'advertisement' element of its TCPA claim." *Id.*

Finally, in *Enclarity*, which the plaintiff contends is dispositive here, the plaintiff dental practice brought suit based on its receipt of a fax asking it to "validate" or "update" its "contact information" on a "database of medical provider business[es]." 962 F.3d at 885–86. The Sixth Circuit held that the plaintiff had plausibly alleged the fax was a covered advertisement, because the recipient's decision to provide its contact information would "pave[] the way" to its being sent "additional marketing faxes." *Id.* at 890. The court found that, "[t]aking the complaint's allegations as true and drawing all inferences in [the plaintiff's] favor," as required on a motion to dismiss, the plaintiff "adequately alleged that the fax . . . was an unsolicited advertisement because it served as a commercial pretext for future advertising opportunities" and, therefore, that the plaintiff "stated a plausible TCPA claim under the fax-as-pretext theory." *Id.* at 891.

### B. Application to the Facts

In the present case, there is no dispute that the Fax was a fax and that it did not contain an opt-out notice. The sole basis for the defendant's motion is that the Fax does not qualify as an advertisement. In considering that issue, the court observes that the important lessons from the cases referenced above, particularly *Enclarity* and *Michigan Urgent Care*, are that (1) whether something qualifies as an advertisement is not necessarily obvious; and (2) the defendant's intent and purpose in sending a fax may not be completely elucidated from the face of the fax itself, in which case (3) the plaintiff's plausible factual allegations must be credited at the motion to dismiss stage. Otherwise, none of the cases cited by the parties and discussed above is directly on point.

The defendant asserts that the Fax is purely informational, directed to a patient who has already been prescribed Xarelto, simply informing that person that a 90-day prescription, rather than a 30-day prescription, could save the patient time and money. The court cannot accept as true,

however, the *defendant's* allegation that the Fax was directed to a person who had already been prescribed Xarelto. Irrespective of the fact that the Fax was attached as an exhibit to the Complaint, the factual content of the Fax is hearsay that has not been adopted as true by the plaintiff. Moreover, *why* the Fax—which appears to be directed to a specific patient—was sent to the Pharmacy is a question not answered by the face of the Fax itself. A Fax sent to a pharmacy, in effect, does not convey information *to the patient*.[1]

Even if it is true that the patient identified in the Fax had already received a 30-day prescription for Xarelto, the Fax, on its face, may be construed as promoting a 90-day prescription and suggesting that the patient call her doctor to ask about a 90-day supply. In other words, although the defendant claims that the obvious intent of the Fax is simply to inform the patient that she can save money, the Fax actually seems to be trying to *sell more product*. That is, it is "advertising the commercial availability" of a 90-day supply of Xarelto, 47 U.S.C. § 227(a)(5). And a defendant trying to sell more product is usually doing so with "profit as an aim." *Sandusky*, 788 F.3d at 224. Without more information about the patient (does her medical condition warrant a long-term prescription or a short-term prescription?) and the defendant's actual intent (did the defendant actually have "profit as an aim"?) and its relationship with J&J, the court cannot determine as a matter of law that the Fax is *not* an advertisement. As in *Michigan Urgent Care*, 2020 WL 7042945, at *3, it may well "matter[] to Defendant's profits whether doctors take action based on" what patients—or pharmacies—"read in the fax." *Id.* at *3.

---

[1] By sending the Fax to the Pharmacy, the sender was apparently counting on the Pharmacy to convey that information to the patient, thus suggesting that the product was being marketed, at least indirectly, to the Pharmacy. And, of course, if the Pharmacy passed along the information to the patient, it could be seen as promoting the sale of more Xarelto (a 90-day supply, instead of a 30-day supply that a patient might or might not get around to refilling). It is not unreasonable to infer that this was the defendant's intent in sending the Fax to the Pharmacy.

In sum, viewing the Fax on its face and construing the non-conclusory factual allegations in the Complaint as true, the plaintiff has plausibly alleged that the Fax is an advertisement. Further factual development of the plaintiff's claim is required, and the defendant is not entitled to dismissal of the TCPA claim as a matter of law.

## IV. CONCLUSION

For the reasons set forth herein, the defendant's Motion to Dismiss (Doc. No. 20) will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge